The opinion of the Court was delivered by
-Dunkin, Ch.
It is very difficult to add anything to the reasoning of the circuit decree, or the authorities there cited. The Act of 1795 was not intended to violate any principle of the common law. In Durant vs. Ritchie, 4 Mason, 45, the subject is discussed by Mr. Justice Story with his usual ability and diligence of investigation. After noticing that, by the common law, the only mode by which a wife could make a valid conveyance of her real estate, was by fine or common recovery, he states that the reason of her general disability may have arisen from the artificial rule that her separate existence is merged or suspended during the coverture; or (as he says) what is more probable, from the fear that her acts, during the coverture, might be exacted by the influence or compulsion of the husband. The exception introduced in favor of fines and common recoveries, countenances the latter supposition. For though, in their origin, these were presumed to be adversary suits, yet the principal reason assigned in the books for their conclusiveuess upon the estate of the wife, is that her voluntary assent is ascertained by the secret examination of the Court.” Again, at p. 61, “the feme coverte is not disqualified by the commin law from conveying; but her con *136 veyance is required to be by some solemn act of record, whereby her consent, upon examination, may be known to be free and voluntary.” In reply to the objection that, by the common law, the husband cannot convey to the wife, or the wife to the husband, he says: In respect to the common law, the unity of persons, which arises from the relation of husband and wife, certainly prohibits a direct and immediate conveyance from one to the other from having any legal effect. But either may, at the common law, indirectly convey to the other through the medium of a trustee, or by any conveyance which operates a transmutation of possession. He instances among others, the case of a fine, “where the husband and wife may declare the uses of the wife’s estate, either to the husband, or husband and wife, as well as to any third person. In short, they have as effectual power to declare the uses in such case as any third person. So that (he adds,) so far as the objection rests on a general disability by the common law, it is not sustained, for it does not exist. The estate of the feme coverte, whenever it can be conveyed by her at all, can be conveyed to any uses whatever, and as well to the use of the husband as to any other use.” Such was the condition of the common law in respect to the efficacy of a fine. The first legislative enactment in South Carolina was the Act of 1731, 3 Stat. 303, which recognizes a pre-existing usage in the province, and declares that conveyances, by husband and wife, of the wife’s estate, certified by the Chief Justice as to the separate examination, &c., and recorded in the office of Pleas, “shall be deemed as effectual and valid in the law, to all intents and purposes whatsoever as any fine passed in due form of law in his Majesty’s Court of Pleas, at Westminster, for conveying of lands in Great Britain.” The Act of 1767, (7 Stat. 196,) did no more than to extend the authority of the Chief Justice to any of the assistant Judges, and thus stood the law until the Act of 1795, (5 Stat. 257.) In the meantime, so far as the books shed any light upon the subject, the practice of the country and *137 the understanding of the profession had been uniform. Lloyd vs. Inglis, 1 Dess. 333, was a case of great interest, in which the most able and experienced counsel were mar-shalled on either side. It was twice heard before the Chancellors in 1793. Alexander Inglis “being desirous of having the real estate of his wife (formerly Mary Deas) vested in himself,” conveyances were drawn from Inglis and wife, to John Lloyd, and from Lloyd back again to said Inglis, in order so to vest the state in Inglis. Sometime afterwards Mrs. Inglis died, and, at no distant period, her husband followed ■ her. The bill was filed by the children of Mrs. Inglis, who . were represented by General Pinckney and Thomas Parker, Esq. The allegation was that the conveyances were intended to have been in trust for the benefit of the children, and the claim was successfully opposed by the creditors of Inglis, represented by Mr. Pringle and Mr. Rutledge. But if the deeds between Inglis and wife and Lloyd had not been as valid as a fine passed in the Courts of Westminster, the right of the children to the lands was patent and irresistible. So, in the recent case of Smith vs. Hilliard, 3 Strob. Eq. 211. Isham Williams and wife, by lease and release, twenty-seventh and twenty-eighth September, 1793, conveyed her real estate to Thomas Rivers. On third October, Mrs. Williams regularly renounced her inheritance, which was duly certified and recorded. Rivers re-conveyed to Williams, reciting the purposes of the parties. These papers were all prepared by General Pinckney. It was adjudged by the Court of Appeals that “ Isham Williams had a fee simple estate in the wharf described in the pleadings.” In that case it is true that the argument turned upon the estate which Mrs. Williams took under her father, Edward Shrewsbury’s will, and which was adjudged to be a fee simple; but, neither at the bar nor in the several opinions delivered, was any doubt expressed as to the effect of the deeds in vesting the wife’s real estate in her husband. Then the Act of 1795 purports, by its title, to provide a mode of facilitating the *138 conveyance of real estate. The preamble recites that the conveyance by lease and release is expensive, and ¡is found by many of the inhabitants of this State to be very inconvenient ; for remedy whereof, a more simple mode is prescribed and declared to be effectual. By the same Act a manner of barring the inheritance of a feme coverte is prescribed. Every precaution is adopted for securing her separate examination and affording her time for reflection, as well as for giving publicity to the transaction, while, at the same time, the conveyance of her interest is facilitated by extending to Justices of the Quorum the authority to take her acknowledgment, &c. This is the whole purpose and effect of the Act of 1795. By the common law she and her husband might, by fine, declare the uses of her estate either to her husband, or to any third person. The unity of their persons prohibits a direct conveyance from one to the other; but, as Mr. Justice Story remarks, either may, at the common law, indirectly convey to the other through the. medium of a trustee. No part of the Act of 1795 discountenances such proceeding, or intimates any restriction on the power of the wife, or incapacity on the part of the husband.
It is ordered and decreed that the appeal be dismissed.
Dargan & Wardlaw, CC., concurred.

Appeal dismissed.