GEORGE C. NIGHTINGALE and another, Assignees, *v.* HENRY A. HIDDEN and others.

Although no particular form of words is necessary to create an estate to the sole and separate use of a woman as against her present or future husband, yet such language must be used in the instrument limiting the use, as clearly and unequivocally expresses the intent to exclude his marital rights, and does not leave that intent a matter of doubt and speculation.

Hence, where the guardian and brother of a *feme sole* who was under age and contracted to be married, at her request, purchased an estate with her money, and then took the deed to himself in fee, described therein as her guardian, *habendum* " to him, his heirs and assigns forever, to and for the only proper use, benefit, and behoof" of his ward, " her heirs and assigns forever," and the covenants of warranty, and for quiet enjoyment, in the deed, ran to him, "his heirs and assigns, to and for the sole use, benefit, and behoof" of her, "her heirs and assigns," *it was held*, that these words merely did not create a trust for the sole and separate use of the ward; but, there being nothing for the guardian to do under the provisions of the deed, the statute of uses transferred the legal estate to the ward, so as to admit her husband to curtesy in her estate.

BILL IN EQUITY by the plaintiffs, as assignees of Zachariah Allen, under a voluntary assignment by him executed on the 30th day of September, 1858, for the benefit of his creditors, for instructions, and to redeem a mortgage executed by the assignor and his wife on an estate situated on the northerly side of Westminster street, in Providence, and for other relief.

The cause came to a full hearing at the present term, upon the bill, answer and proofs, and from these it appeared, that on the 17th day of July, 1816, Eliza Harriet Allen, the wife of said Zachariah, was then, as Eliza Harriet Arnold, unmarried and under age, though contracted to be maried to the said Zachariah,

and that her brother and guardian, the late Samuel G. Arnold, at her request, purchased with her moneys in his hands as guardian, the estate in question, from one Joseph J. Fenner, and took from the said Joseph a conveyance to himself, described in the deed as the guardian of his sister; the deed reciting that the consideration was " advanced and paid by said Samuel, at the special instance and request of the said Eliza Harriet Arnold." The *habendum* of this deed described the estate or interest as conveyed to " the said Samuel, his heirs and assigns forever, and to and for the only proper use, benefit and behoof of the said Eliza, her heirs and assigns forever." The covenants of warranty and for quiet enjoyment and against incumbrances assured the estate to " the said Samuel, his heirs and assigns, to and for the sole use, benefit and behoof of the said Eliza, her heirs and assigns." On the 10th day of September, 1857, Zachariah Allen, and the said Eliza Harriet, his wife, joined in a mortgage in fee of this estate to Henry A. Hidden, of Providence, to secure to him the payment of a promissory note of $15,000, bearing even date with the mortgage, and on the same day, the said Zachariah, in consideration thereof, mortgaged in fee his homestead estate on North Main street, in Providence, to William D. Ely, of said Providence, in trust, and for the sole and separate use of said Eliza Harriet, her heirs and assigns forever, to secure the payment of his promissory note of the same date to said Ely as such trustee, for the sum of $15,000, payable in six months after date with interest; the latter mortgage containing a power to sell the estate, in case of the said Zachariah's default in the payment of his said last mentioned note. On the 18th day of September, 1858, Ely, at the request of Zachariah Allen and wife, transferred his interest and trust in this mortgage to Richard J. Arnold, of Providence, and on the 30th day of September, 1858, Zachariah Allen having become insolvent, conveyed all his estate, of every kind, to the plaintiffs, by a voluntary assignment for the benefit of his creditors. A few days before the execution of this assignment, Hidden was let into possession of the estate on Westminster street, mortgaged to him; and on the 10th day of March, 1860, by mutual deeds of transfer, exchanged with Richard J. Arnold, trustee for Mrs. Allen, his mortgage on the Westminster street,

for her mortgage on the North Main street or homestead estate of her husband. Hidden having, under the power in the mortgage on the North Main street estate thus assigned to him, advertised that estate for sale to satisfy the mortgage, the assignees filed this bill against Hidden, Allen and wife, Arnold, and Ely, to redeem the Westminster street estate, upon an account being taken of rents and profits, if the court should be of opinion that under the assignment they took any interest therein, and in the meantime to stay the sale of the North Main street estate. Their right to redeem was denied by the defendants, on the ground, that the deed from Joseph J. Fenner to Samuel G. Arnold settled the Westminster street estate to the sole and separate use of Mrs. Allen, and excluding the marital rights of her husband therefrom, left nothing in him in that property to pass, by his assignment, to the plaintiffs.

Upon the filing of their bill, the plaintiffs had procured a preliminary injunction, staying the sale until further order.

The case was argued in writing by—

*Bradley & Metcalf, for the plaintiffs.*

*R. W. & T. C. Greene, for the defendants.*

BRAYTON, J. There is no question but that the plaintiffs are seized in fee, and in trust, of the homestead estate, situate on North Main street, subject only to the mortgage executed by the defendant, Zachariah Allen, to the defendant, Ely, in trust for Mrs. Allen. It is not denied, that the purpose and intent of this mortgage was, to indemnify Mrs. Allen against loss, and protect her interest in the Westminster street estate, from the payment of a mortgage executed by her husband and herself upon that estate, to secure the payment of the sum of fifteen thousand dollars to the defendant, Henry A. Hidden.

The plaintiffs claim that the said Zachariah, upon his marriage with his present wife, who, when *sole*, was Eliza Harriet Arnold, and the birth of issue of that marriage, became seized of an estate for his life in the Westminster street property, which estate vested in the plaintiffs by the deed of assignment of the said Allen to them, dated September 30th, 1858. The homestead estate has been advertised for sale, under the power of sale contained in the trust mortgage. The defendants deny that said

Zachariah ever acquired any interest in the Westminster street property. The plaintiffs pray that they may be instructed as to their title as trustees in that estate; that they may be allowed to redeem the mortgage thereon, and that the sale of the homestead may be enjoined. Whether the said Zachariah had, at the time of the assignment to the plaintiff, an estate for life, as the plaintiffs claim, in the Westminster street property, depends upon the effect of the deed set forth in the bill, as executed by one Joseph J. Fenner to Samuel G. Arnold, bearing date July 16th, 1816.

The deed, by the premises, purports to grant, sell, and convey the Westminster street property to the said Samuel G. Arnold, his heirs and assigns forever, giving him an absolute fee simple therein; and by the *habendum,*—an use merely, as the plaintiffs claim,—a trust, as the defendants claim,—is limited therein, which is expressed in the deed by the words, " and to and for the only proper use, benefit, and behoof of the said Eliza Harriet Arnold, her heirs and assigns forever;" so that her estate, as created by the deed, whether it be an use or a trust, is also in fee simple. If held to be a mere use, which might be executed by the statute of uses, she would, by force of the statute, become seized of a legal estate in fee simple in the premises.

The rules stated in the argument, as to the office and effect upon the conveyance of the *habendum* in a deed, are, in their proper application, undoubtedly true ; that it cannot divest the grantee, of the legal estate already granted him in the premises,— and where by the premises the estate is granted to one, it cannot by the *habendum* be limited to another,—nor can the *habendum* frustrate a grant complete before, or abridge, or lessen the estate granted. All this is true of the legal estate. But the deed here does not profess to affect the legal estate, already granted in the premises, or to grant any legal estate to any other person than to the grantee named, or to divest him of any estate already given ; nor is there anything in the *habendum,* so far as the legal estate is concerned, repugnant to, or inconsistent with the premises of the deed. The office of the *habendum* may, however, be, to declare to what use the grantee shall hold the estate granted him. Shep. Touchst. 75 ; Cruise, tit. xi. ch. 2, § 30 ; tit. xxxii. ch. 2 ; tit. xi. ch. 3, § 24 ; *Durant v. Ritchie,* 4 Mason, 45. All the cases cited by the defendants assume this.

It is not necessary, it is true, that the declaration of uses should be made in the instrument conveying the estate.    The uses might be declared by the grantee by any other proper instrument, with the same effect as if stated in the deed.    The effect, in either case, was, that the legal estate still remained in the grantee named, and his heirs, while the person to whose use he held, though he had no legal estate, and was not regarded at law as having any interest in the land, was, nevertheless, clothed with the whole beneficial interest, and by the aid of a court of equity might take the entire profits of the estate, as if he were seized in fact of the land itself.    It was because the limitation of the use did not transfer the estate to the *cestui que* use, while all the interest which was of any value 'was in him protected from forfeiture, from liability for his debts, not subject to dower, or curtesy, or other duties or burdens incident to a legal estate, that the statute, 27, Hen. 8, was enacted.    In order to destroy this double estate, and to subject the use to the rules of the common law, the statute, where the person seized had no duty to perform, reduced it to a legal estate.    This, the statute effected, by declaring that the estate of the grantee to use should be transferred to the person to whom the use was limited, and not by destroying the form of the conveyance.    The statute contemplated that the use should be limited, as before, to one person upon the seizin of another, and provided, that whenever it was so limited, the seizin should immediately thereupon be transferred to the use.    4 Kent's Com. 299 ; *Thatcher* v. *Omans*, 3 Pick. 521 ; *Durant* v. *Ritchie*, 4 Mason, 45.

The question then recurs, is the limitation in this deed, created by the *habendum* upon the legal estate, an use which the statute will execute, or is it a trust, requiring the legal estate to remain in the grantee for the sole and separate use of the *cestui*, Eliza Harriet Arnold ?    If the latter, the legal estate must remain in the grantee in order to fulfill the trust, and prevent the interference of her husband ; if the former, then the legal estate passed to the said Eliza, and became annexed to the use, and subject to the curtesy.

The words of limitation are, " to the only proper use, benefit, and behoof of the said Eliza Harriet Arnold, her heirs and assigns

forever;" and it is said, that these words do not create an executed use, and that we are to presume the intent to have been, to engraft a trust on the legal estate.   There is no reason, however, for presuming from the mere fact that the words are used in the *habendum* only, and not in the premises, that they were used with the intent to limit a trust, rather than a use, since the limitation of either is equally within the office of the *habendum ;* but whether it be the one, or the other, depends upon the intent of the parties, to be gathered from the language of the instrument itself.   No particular form of words is necessary to create a trust of the nature here claimed, to the separate use of a married woman. It may be declared in express terms, or the intention may be manifested by provisions or directions as to the mode of enjoyment of the property.   Hill on Trustees, p. 419 ; 1 Cruise Dig. 346. But in order to deprive the husband of his marital rights, the intention to create such an estate must be clearly and unequivocally expressed.   Ib.

In Hill on Trustees, it is said, that "in modern times the judges have required much more stringent expressions for this purpose than were once considered sufficient."   In *Tyler* v. *Lake*, 2 Russ. and Mylne, 183, it was said, that the expressions should be such " as to leave no doubt of the intention, and forbid the court to speculate on what the probable object of the donor might have been ;" and referring to the case of *Stanton* v. *Hall*, 2 Russ. and Mylne, 175, it was said, that it had no application to the case then under consideration, " except so far as it sanctions the doctrine, that if a sufficient strength of negative words is not found in the gift or limitation, you are not allowed to fish about for indications of intention from other parts of the instrument,"—nor to go in search of other expressions.   But from whatever language the intent is to be gathered,—whether from the gift, the limitation, or other parts of the instrument, the intent must be clear and unequivocal to exclude the marital rights.   Is there such an intent, clearly and unequivocally expressed in this deed ?   In construing the language of this instrument, there is but one fact *aliunde* the deed which has been put in evidence, which we need take along with us.   It is the fact, that, at the time of the execution of the deed, a marriage between the defendants, Mr. and

Mrs. Allen, was contemplated. We cannot consider any expressed intent of the parties, not contained in the language of the deed.

In looking at this deed, the fact strikes us, that it is the common, ordinary form of conveyance, with warranty, to convey estates from man to man. It is the form used generally in purchases of real estate, whether by men or by women,—married or unmarried,—having the uses declared in the same words here used, " to the only proper use, benefit, and behoof," &c. It has never been supposed that such language in a deed to a *feme covert* or *feme sole*, conveying land purchased by her, expressed any intent to create in her a separate estate, or to exclude the marital rights of a present or future husband. The fact that the estate purchased is conveyed to the guardian does not make the words any more strongly express such intent, or more strongly imply a necessity for a trustee to hold the estate. If the parties actually intended to exclude the husband and create a separate use, we should naturally look for the expression of it to that part of the deed which professes to declare for how long, for what uses, and for whose use, the estate shall be held. We should naturally expect to find there a sufficient strength of negative words to show such intent clearly ; and if omitted there, we should infer that it was because the intent itself was wanting.

The deed discloses the fact, that the moneys paid for this estate were the proper moneys of the ward, and that they were paid and advanced by the guardian at her express request. Without any declaration of use in the deed, a trust would have resulted to her from the fact disclosed, that her money was paid for the estate ; and in that case the legal estate would not have vested in her, or been executed by the statute. Resulting trusts are not executed by the statute, but are excepted out of it. In order, therefore, that the estate might vest in her by force of the statute, this declaration of use was necessary to be made ; for though the statute will not execute a resulting trust, it may an express one. The words used are appropriate to that purpose, and, in so far, necessary words. It was necessary to exclude the idea that any benefit whatever was to result to the guardian,—that though he had paid the money, and though he was the grantee, yet it was

not to be for his use in whole or in part, but, in so far as he was concerned, to the only proper use of his sister and ward. The guardian here was not,—at least it does not appear that he was,—settling this property upon her. He had no power to settle it. He was simply making a purchase for her, with her money, to enure to her use, and not to his, and to vest in her as if the deed had been made directly to her. Having no power to make a settlement upon her, we are not at liberty to presume that he had such a purpose, without some stringent expressions in the deed.

We do not think that the words limiting the use in this deed, considering that they are the words ordinarily used in conveyances where no such purpose exists, leave the intent to create a separate estate simply in doubt ; but think that they do not indicate an intent to exclude the marital rights.

The language of the covenants of warranty and of quiet enjoyment leave us only to speculate on what the probable object of the parties was. They are far from being expressions, clear and unequivocal, as to the intent ; and we think we may safely assume, that had there been any positive intent or purpose to exclude the marital rights of the husband, it would not have been left to be inferred from expressions indirectly thrown into a covenant, which would not vary its legal effect. The fact that a marriage was intended, might have served to explain doubtful language, had there been any reference to such fact expressly or impliedly, or even remotely. There is, however, nothing left doubtful here which that fact tends to explain. The language might have been the same, and the sense the same, whether that fact did, or did not, exist.

The case of *Ayer* v. *Ayer*, 16 Pick. 327, relied upon by the defendants, is distinguishable from the case before us. The deed there was by a mother ; the consideration was love and good will ; the *habendum* was, " to hold to him (grantee), his heirs, &c., in *trust*, and for the sole use and benefit " of a daughter, during her life, with remainder to her children. It was a gift, not a purchase. It was to be to the sole use and benefit of the daughter ; she being a married woman. It is expressed to be " in trust," and to continue during her life, and then the estate to go to her children. All these are mentioned as circumstances

to be weighed, as showing that a special benefit was intended for the daughter, during her life. The use of the technical words, " in trust," though they are not conclusive or controlling, is yet, in the language of Lord Eldon, in *King* v. *Denison*, 1 V. & B. 273, " a circumstance to be attended to ;" and the court, in *Ayer* v. *Ayer*, advert to this as a fact to be considered, that the estate was conveyed to trustees, and that the trustees were to hold during the life of the wife.

Finding no sufficient ground in the language of this deed to warrant us in holding the limitation here to have been in trust for the separate use of Mrs. Allen, we must, since the deed limits a use to her, her heirs and assigns, hold that the use became executed, and that the estate vested in her by the statute of uses, in force here, and that the said Zachariah Allen acquired an estate in the Westminster street property for his life, which he, by his assignment, vested in the plaintiffs. Having that interest, the plaintiffs are entitled to redeem the mortgage upon that property, and, for that purpose, to an account, as prayed for in their bill ; and the case must be referred to one of the masters of the court for that purpose. In the meantime, the sale of the homestead estate, under the power contained in the trust mortgage, must be enjoined.

---

This case was originally heard and decided at the September term for the county of Providence, 1861 ; and was again brought before the court, upon a petition for rehearing, at the March term for the county of Providence, 1862.

*R. W. & T. C. Greene, for petitioners and defendants :*—

The intent of the parties to a deed is to govern in its construction. This intent is to be collected from the language of the deed. If the language be doubtful, resort is to be had to the circumstances of the parties, and the object in view in making the deed. If the language of the deed show an intent to vest the legal estate in Eliza Harriet Arnold, the court will so construe it. If, on the other hand, the language of the deed show an intent to vest a legal estate in Samuel G. Arnold and a use or trust in

Eliza Harriet Arnold, the court will give that effect to it. With these rules in mind, let us examine the provisions of the deed in question.

I. The *premises.* This part of the deed is the highest, and the controlling evidence of the estate intended to be conveyed, and of the party to whom the conveyance is intended to be made. The entire estate, legal and equitable, is, by the *premises,* conveyed to Samuel G. Arnold, his heirs and assigns forever.

II. Next comes the *habendum.* This cannot divest the estate of the grantee, conveyed by the *premises.* Such an intent, however clearly manifested by the *habendum,* must yield to the higher evidence of intent manifested by the *premises.* If, therefore, the *habendum* in the present deed had been to Eliza Harriet Arnold and her heirs, it would have been no evidence of an intent to vest the estate in her. But it is said, the *habendum* may declare a use in favor of a third party, leaving the legal estate in the grantee named in the *premises,* and when the use is declared, the statute executes it, by vesting the legal estate in the *cestui que use.* Now, in the first place, the statute of uses was not intended to change the relative offices of the *premises* and the *habendum* in deeds, certainly it was not intended to make the *habendum* higher evidence of intent than the *premises.* *Habendum* to Eliza Harriet Arnold, her heirs and assigns, is as clear evidence of an intent to vest a legal fee in her, as *habendum* to Samuel G. Arnold, his heirs and assigns, to the use of Eliza Harriet Arnold, her heirs and assigns. The language in both cases manifests a clear intent to vest a legal fee in Eliza Harriet Arnold. Now, will the court say, that the *habendum,* direct to Eliza Harriet Arnold and her heirs, shall yield to the *premises,* as evidence of intent, and the *habendum* to Samuel G. Arnold, to the use of Eliza Harriet Arnold, shall control the *premises* as evidence of intent ? To say that the statute executes the use in Eliza H. Arnold does not answer the argument. The statute executes the use, if such be the intent of the parties, and not otherwise. Conveyances under the statute of uses, are to be construed according to the intent of the parties, as much as conveyances at common law. A conveyance to A and his heirs, to the use of B and his heirs, is evidence of an intent to vest a fee in B, as much as if the conveyance had been

directly to him. In both cases, it is the intent of the parties which gives efficacy to the conveyance. Even in cases where the *premises* grant the estate to A and his heirs, to the use of B and his heirs, B will not take the legal estate, if it appears from other provisions in the deed that B should have the use only. Thus, where by the provisions of the deed it was apparent that the parties contemplated that A should have the legal estate and B the use, B would take a use only, and A the legal estate ; and this, although the grant in the *premises* was a conveyance to A and his heirs, for the use of B and his heirs. But, in the present deed, the use is declared in the *habendum* only. It is true, the *habendum* is competent to declare a use; but the question is, whether such a declaration furnishes such evidence of an intent to vest the legal estate in the *cestui que use,* as will control the grant in the *premises,* made to another party. The exercise of the admitted power in the *habendum* to declare a use, becomes the exercise of a higher power of granting the legal estate, and thereby controlling the grant in the premises. By the construction contended for, the parties are to be presumed to have intended to do by the *habendum,* not what they had a right to do, to declare a use, but to do what they had no right to do, to convey the legal estate to a third party. The declaration of a use in the *habendum,* becomes more powerful than the direct conveyance of the legal estate. Suppose the *premises* had been to A and his heirs, to the use of B and his heirs, the *habendum* to B and his heirs, to the use of A and his heirs,—B has a vested legal estate in the premises just as much as if the grant had been directly to him. Does the use in the *habendum,* to A and his heirs, divest B's legal estate granted in the *premises?* The question always asked is,—What did the parties intend by the provisions of the deed ? Did they intend a use or a legal estate ? No case has been found in which it has been held, that the declaration of a use in an *habendum* is higher evidence of an intent to vest a legal estate in the *cestui que use,* than a direct conveyance. There is another aspect of the *premises* and *habendum* in the deed, to be considered with reference to the intent. If the intent had been to vest a legal fee in E. H. Arnold, she would have been named as grantee in the *premises,* either as direct grantee or as *cestui*

*que use ;* the *premises* being the part of the deed which exclusively makes the grant, and controls all other parts of the deed, as evidence of the grantee and the estate granted. But if the intent was to do by the *habendum* what is its appropriate office,—declare a use in favor of Eliza H. Arnold,—such intent did not require her name to be mentioned in the *premises.*

III. Let us next examine the covenants in this deed. We have already adverted to the construction given to conveyances under the statute of uses,—that although the *premises* clearly indicate an intent to convey the legal estate to the *cestui que use,* yet, if from other provisions in the deed, it appears that the intent of the parties was, that the first grantee should have the legal estate and the *cestui que use* only a use, that intent should be carried out ; and this rule of construction would be more liberally applied where the only evidence of the grant to the *cestui que use* is found in the *habendum,* and that grant conflicts with and overthrows the grant in the premises. The court will find that the covenants contained in this deed, of the lawful ownership of the grantor, and lawful seizin, and of authority to sell and convey, are all with the said Samuel G. Arnold, his heirs and assigns, and are all void, unless the legal estate be in Samuel G. Arnold. They show clearly an intent of the parties, that Samuel G. Arnold should have the legal estate.

The covenant for quiet enjoyment is even still more significant,—" and that the said Samuel, his heirs and assigns, to and for the sole use, benefit and behoof of the said Eliza, her heirs and assigns, shall and may, from time to time, and at all times forever hereafter, by force and virtue of these presents, lawfully, peaceably, and quietly have, hold, use, occupy, possess and enjoy the said demised and bargained premises." This covenant bears upon the construction of the deed in two important particulars : 1. It is a covenant with Samuel G. Arnold, his heirs and assigns, like the covenants already referred to. 2. It provides that Samuel G. Arnold, his heirs and assigns, shall hold, use, occupy, &c., for the sole use and benefit, &c. This comes directly within the rule already adverted to. Samuel G. Arnold, his heirs and assigns, are to hold, use, occupy, possess, &c., to and for the sole use, &c. These acts which, by the terms of the covenant, he is

to perform, show that the intent of the deed was to vest in him the legal title, and confirm the construction we have put upon the *habendum*, that it was intended as a declaration of a use in favor of Eliza Harriet Arnold, and not as a conveyance of the legal estate to her. Next comes the covenant of warranty, which runs,—" to him, the said Samuel, his heirs and assigns, to and for the sole use, benefit and behoof of the said Eliza, her heirs and assigns, against the lawful claims of any person or persons whatsoever, forever to warrant, secure and defend by these presents." These covenants are wholly irreconcilable with any other intent in the parties to this deed than to convey the legal estate to Samuel G. Arnold, and the use, to his sister.

Next comes the release of dower, and this is,—" And I, Harriet D., wife, &c., for the consideration, &c., do hereby remise, release and forever quitclaim unto the said Samuel, his heirs and assigns, to and for the sole use, benefit and behoof of the said Eliza, her heirs and assigns, all my right, title, interest, and right of dower and power of thirds, in and to the premises aforesaid." A right of dower during the lifetime of the husband could not be conveyed under the statute of uses. There could be no seizin in the first grantee. Unless, therefore, Samuel G. Arnold took the legal estate under the deed in question, the release of dower was void, and is wholly irreconcilable with any intent other than that Samuel G. Arnold should have the legal estate, and his sister, the use. The language of this release is like the language of the covenants of quiet enjoyment and warranty,— " to the said Samuel, his heirs and assigns, to and for the sole use, benefit and behoof of the said Eliza Harriet Arnold, her heirs and assigns." The construction, which is here contended for, gives its proper effect to every part of this deed : the *premises*, which grants the estate to Samuel G. Arnold and his heirs ; the *habendum*, which declares the use to which he shall hold the estate ; and the covenants and the release of dower, which carry out the legal estate in Samuel G. Arnold, and the use, in his sister.

No case is found where the declaration of a use in the *habendum* has been held to convey the legal estate to a party not named in the *premises ;* certainly none where, as in this case, every other part of the deed shows clearly an intent to declare a use

merely, and not to convey a legal estate. There surely is no motive in the present state of the law in Rhode Island in relation to the rights of married women, to make a precedent which shall conflict with the obvious intent of the parties to the deed, and defeat the obvious intent for which the purchase was made. In the opinion of the court, it is said, the guardian had no right to purchase this estate for the use of his ward; that is a question which would properly come up upon a settlement of his accounts, and cannot affect the construction of the deed. But we submit to the court, the investment of this money in the way in which it was intended to be made for the use of his minor sister then about to be married, was a judicious investment, and one which a court of equity will encourage. It is said that the language of the *habendum* is like the ordinary form of words used in deeds in Rhode Island. The ordinary form is,—" to have and to hold, &c., to him the said Samuel G. Arnold, his heirs and assigns forever, to his and their proper use, benefit and behoof forever." In the deed in question, after the words, " heirs and assigns forever," the word, " and," is interlined, and after the word, " behoof," are the words, " of the said Eliza, her heirs and assigns."

There remains another view to be taken of the language of the covenants contained in this deed. This language clearly imports a legal estate in S. G. Arnold, and a use for his sister. In *Ayer* v. *Ayer*, 16 Pick. 331, the court say:—" In the present case, the estate was conveyed to the trustee, 'in trust, and for the sole use and benefit of the plaintiff' during her natural life, she then being married. These words, we think, distinctly express an intention to create a trust for the separate use of the wife, and would entitle her to the rents and profits, to the exclusion of her husband, if the conveyance had been made to the husband on the same trust, or if the land had been conveyed to the wife directly for her sole use and benefit for life, and remainder to her three children, without vesting the estate in trustees. It seems to be now settled in England, although formerly doubted, that a court of equity will supply the want of trustees in the gift or devise, and make the husband trustee." In this case, the word " trust," was " use;" but the words, " use " and " trust," are equally within the operation of the statute; per Lord Ellenborough,

Doe, d. *Terry* v. *Collier*, 11 East. 377 ; Hill on Trustees, 333, n. *x*, and cases cited.

In the opinion of the court, delivered in the case under consideration, the court say: in England, conveyances to secure to the wife her separate property are much more rigidly construed against the wife, and in favor of the husband, than in former times ; that if a sufficient strength of negative words are not found in the gift or limitation, you are not allowed to feel about for indications of intention from other parts of the instrument. ·

The view which we have taken of this deed is not affected ·by the quotation which we have given ; nevertheless, we respectfully submit to the court, that the doctrine there stated as the doctrine of the English courts is not authority in Rhode Island, and is opposed to the policy of our law. The policy of our law favors the securing the property of married women and women intending to be married, to their sole use ; and a deed in Rhode Island, intended to secure the property of a married or an unmarried woman to her separate use, is not to be construed unfavorably to the married woman, nor favorably to the husband, actual or intended. Like all other deeds, it is to be construed according to the intent of the parties ; and this intent is to be collected from all the parts of the deed, and if practicable, so construed as to give effect to all parts of the deed. If the language is doubtful, then, in the language of the court in *Ayer* v. *Ayer*, " the intention of the donor is to be ascertained by the object of the gift, and the situation of the parties at the time when the deed was executed."

We have endeavored to show, that taking the rule of construction which requires that the deed should show a clear intent to secure the property to the separate use of the wife, that all parts of this deed show such clear intent. But let us look to what was the object of the parties in taking this conveyance, and the circumstances under which it was taken. In *Ayer* v. *Ayer*, the court relied upon the circumstance, that the gift was to a married woman. In the present case, the purchase is made with the personal property of the minor sister, in contemplation of marriage ; and the conveyance taken under these circumstances furnishes as strong evidence of an intent to secure the personal

property thus invested, to the use of an intended wife, as if she were married. Nor is the evidence of this intent weakened, that the purchase was made with the property of the minor sister. On the contrary, the facts that the purchase was made by the guardian,— that the *cestui que use* was not only his ward, but his sister, for whom he might be fairly presumed anxious to make a separate provision in contemplation of the intended marriage, are strong evidences of an intent to secure the property to the sole benefit of the *cestui que use;* and if the language of the deed had been doubtful, would have controlled its construction in favor of the *cestui que use.*

In conclusion, we ask the court, if they ever knew a deed drawn in the language of this deed, except when the object was to vest a use, and not a legal estate, in the *cestui que use?* The draft of this deed was prepared by counsel, and copied by Mr. Welcome A. Greene, a witness in this cause. This is a circumstance attending the conveyance, tending to show the intent to vest a a use in the *cestui que use.* If Mr. Searle, who was the counsel employed to draw this deed, or any other counsel had been instructed to draw a conveyance to the sister, we have a right to say, that it is incredible that he should have used the language found in this deed; and that this language would not have been used, except for the purpose of securing the estate to Miss Arnold, in contemplation of the intended marriage. The statute of uses has been adopted by the General Assembly of Rhode Island, but its policy never had any application to this State ; and so far as it seeks to avoid any conveyances before or after marriage, intended to secure the property of the wife, actual or intended, to her use, is in direct conflict with the policy of our existing laws, securing to the wife her own property. It would be an anomalous state of things for the Supreme Court of the State to adopt the policy of the English courts, in contravention of the policy of our own laws, as enacted by the General Assembly of the State, and that, too, in a case where, as we think, it has been shown, that the English courts would affirm the separate use of the wife.

*Bradley & Metcalf, for the complainants :—*

The only construction that can be given to the deed on which this suit is based, consistent with the authorities, is the one claimed in the bill,—that the conveyance to Mrs. Allen's guardian,

*for her use,* vested in her the legal estate.　R. I. Public Laws of 1798, 78, 267 ; 4 Kent's Com. 294, 299 ; 1 Greenleaf's Cruise on Real Property, 315 ; *Thatcher* v. *Omans,* 3 Pick. 521 ; *Durant* v. *Ritchie,* 4 Mason, 45 ; *Webster* v. *Cooper,* 14 How. (S. C.) 488.　The petition for rehearing lacks the necessary certificate of counsel.　3 Dan. Ch. Pract. 1623.

BRAYTON, J.　In the opinion delivered in this case at the last term, we assumed the correctness of the propositions with which the counsel has prefaced his argument, viz., that the intent of the parties is to govern in the construction of every deed ; that the intent which is to govern is to be collected from the language of the deed ; and if that be doubtful, the circumstances under which the deed was executed were to be taken into consideration.

It is not every intent of the parties, however, that can, when thus ascertained, be carried into effect.　If it be one in contravention of the law, no effect will be given to it.　Hill on Trustees, 455.　We may assume, then, that the parties to this deed intended that Samuel G. Arnold, named as the grantee, should take and retain the legal estate, and that his sister and ward should take only the beneficial interest,—a right to have and receive the income and profits thereof.　This purpose is just that which the statute was designed to defeat.　No intent of the parties can stay the execution of the statute, in a case where the legal estate only is vested in the grantee, and the beneficial interest of the same estate is limited to another.　*Gregory* v. *Henderson,* 4 Taunt. 772.

It is said, that in order to prevent the legal estate from being executed in the *cestui que use,* it is necessary to vest in the trustee, not only the legal estate, but the first use, and because, it is said, the first use only will be executed.　So, it is also said, that a special trust is not within the act, because the first use is in the trustee ; a special trust being one where the trustee is not a simple depositary of the title, but, in the contemplation of the parties, is to perform some act in the accomplishment of the purposes for which the trust was created.　The inquiry in every such case is, was an active agency intended to be given the trustee,—any act required of him, in the execution of the trust, which requires him to take the income and profits, or, in other words, to have the

*first* use ? If so, having the legal estate and the use, no further use limited thereon can be executed. Hill on Trustees, (231) ; Cruise Dig. tit. xii. ch. 1, §§ 14, 28. In the case before us, the only question is, whether the intent was, that the grantee should be charged with this active duty. There is no express provision in the deed for any act to be performed by the grantee. No act is specified which he is to perform. It is to be implied (there is nothing else in the deed from which it can be implied) from an intent expressed by the parties, that the use limited to the said Eliza, should be for her sole and separate use, to the exclusion of all control of her husband,—a purpose which could not be accomplished unless some one were interposed to take the rents and profits—the first use.

Our enquiry is narrowed down to the question, which we have heretofore considered as the only question in the case, whether the parties intended so to secure to the said Eliza the use of this estate as to exclude all power and control of her husband over it, and was this intent clearly and unequivocally expressed by the language they have used ? In construing the language here, we do not see how we can, as it is suggested we ought to do, assume that the statute of uses, formally introduced, as it was, and declared to be in force here, and, as the committee who reported it in 1749 say, "it has heretofore been," was always against the policy of this State. The legislature are the better judges of what policy requires ; and whatever they enact, we are to presume to be such as policy requires. The provisions of this act, when introduced here, were introduced with the construction then put upon them in England. If they had undergone changes since that time, down to the time when this deed was executed, these changes are not to be disregarded. We ought not, however, to be governed by modern enactments indicating a change in the policy of our law in relation to this subject, passed since the contract of the parties.

In the form of conveyances with warranty in general use, the language of the *habendum* is, "To have and to hold to him, the said (grantee,) his heirs and assigns, and to his and their only proper use, benefit, and behoof forever ;" and by this language the estate is expressed to be limited to the use of the grantee, excluding

MARCH TERM, 1862. 133

Nightingale and another, assignees, *v.* Hidden and others.

any resulting or implied use in any other person. It limits to him the first use. It is appropriate language to declare a simple use, and is so commonly used and understood; and had the parties here retained this language as to the grantee, and then limited the further use to the said Eliza Harriet, the use to her could not have been executed. But instead of limiting the first use to Samuel G. Arnold, the grantee, the parties have, using the same language, limited the first use to the said Eliza, giving her, therefore, a like simple use.

. We may assume, we think, that there is nothing in the language of this deed, either in the premises or in the *habendum,* which would leave a reasonable doubt, that the use here limited was a simple use, requiring no act whatever to be done by the grantee, and excluding no marital right. Yet it is in these portions of the deed that the use should be declared. They are the parts appropriate to that purpose,—where it is naturally to be looked for. No one, failing to find it there, would, in the expressive language used in *Tyler* v. *Lake,* "*fish* elsewhere in the instrument" for the expression of such an intent. It is not necessary to say, that expressions used elsewhere are not to be regarded, or that such expression of intent may not be sufficiently clear and unequivocal. The language of the court in *Tyler* v. *Lake,* does not exclude them from consideration, but requires only that they shall, in order to be controlling, be so clear as not to leave the court to speculate as to what the probable intent of the parties was,—not such as raise a doubt merely, or even, as expressed in *Ashcroft* v. *Little and others,* 4 Ired. Eq. 236, as raise a probability that the marital right was to be excluded. They ought to be such as strike the mind as having been designed to supply the omission of such expression of intent in its proper place, or as designed to make a further limitation.

A consideration much relied upon in the argument was, that the covenants in this deed, being made with the grantee, his heirs and assigns, would be void, unless the legal estate remained in him, and would not inure to the benefit of the *cestui que use.* Were such the result of holding this to be a use executed, this consideration should weigh strongly against such a construction. No such consequence, however, would follow. The proposition

assumed is not maintainable. All covenants running with the land, upon alienation, pass to the assignee, and inure to his benefit; and it is not material whether the conveyance be voluntary or not,—whether it be by deed or by statute conveyance. A conveyance by a sheriff, under a levy, is sufficient for this purpose; *Whitney* v. *Whitney*, 3 Metc. 81; and a *cestui que use* is, for this purpose, deemed to be an assignee under the statute of uses, in the same manner as if a deed had been executed to him by the donee to uses. 1 Smith L. Cases, (30); 2 Sugd. 700; Rawle on Covenants, 360; Cornish on Uses, 180. In these cases, indeed, the covenants are always made with the grantee. It will be noticed of the covenant of seizin and of power to convey, which is especially referred to by the counsel, that it refers to the grant in the premises and the limitation of the *habendum*, and covenants that the grantor has good right to convey in *manner aforesaid*. In this covenant are no words suggestive of the idea of a separate use, or of the exclusion of the husband.

It is again said, that the release of the right of dower will not inure to the *cestui que use*, if the use be executed, but will be void. Any objection there might be to treating the release as the conveyance of an estate, we need not consider. The right here released was not an estate, and could not be until dower were actually assigned. It was a mere right,—a contingent right,—to have dower assigned. It was the proper subject of a release; and the effect of the release was, that the right became extinguished in the relessee, and the estate of the grantee became discharged of the contingent right, so that it would pass unencumbered to every successive assignee, the *cestui que use* being the first.

The language, then, from which the intent to create a separate use and to exclude the marital right is to be gathered, and as an unequivocal expression of it, is that contained in the covenant, that the grantee may quietly enjoy " to and for the sole use, benefit, and behoof of the said Eliza," and in the covenant, that the grantor will warrant to him, " to and for the sole use, benefit, and behoof of the said Eliza," and in the release to him of the right of dower, " to and for the sole use, benefit, and behoof of the said Eliza." As we have before said, these expressions, in the places where we find them, leave us only to speculate upon what was

the probable intent of the parties; and we may now say, that they do not seem to be introduced there with any apparent definite purpose. In this connection, they do not strike us as words used more fully to declare, or further to limit, the use, or to supply any omission to declare it, in its proper place. They are not necessary to the operation of the covenant or of the release, in favor either of the grantee or *cestui que use*, and do not vary their legal effect. They are, however, sufficient, and only sufficient, to raise a doubt as to the other language of the deed, otherwise sufficiently clear.

It is suggested, that the draft of this deed was prepared by counsel. The witness who wrote the deed says only, that *he probably* copied from a draft prepared by counsel, and assumes that it was so. It is further suggested, as incredible, that counsel should have used this language in a deed, except for the purpose of securing this estate against the husband's control. It seems to us quite as incredible, that, if such were the intent, and the deed drawn with that view, counsel should have left this language to be used in the covenant, where it was altogether unnecessary, and where it was unlooked for, and in limiting the use with apparent care in the *habendum*, and in its proper place, where only it would effect the intent of the parties, should have failed to use any such expressions; and this leads to the conclusion, that probably the draft was not prepared by counsel, but by some one who had no very definite idea of what was intended, or how the intent was to be carried out.

We are not satisfied that the decree rendered upon the former hearing was erroneous, or ought to be reversed; and our judgment is, that this petition for a rehearing be dismissed.