PHILBROOK (VOSE v.). See Case No. 17,-010.

PHILIP DE PEYSTER, The (MORGAN v.). See Case No. 9,805.

---

## Case No. 11,092.

### PHILIPS et al. v. CRAMMOND et al.

[2 Wash. C. C. 441.] [1]

Circuit Court, D. Pennsylvania. April Term, 1810.

TRUSTS—INVESTMENT OF FUNDS HELD IN FIDUCIARY CAPACITY—INVESTMENT OF PARTNERSHIP FUNDS—RESULTING TRUST—EVIDENCE.

1. The general principle of equity is, that if a receiver. executor. factor, or trustee. lay out the money which he holds in his fiduciary character, in the purchase of real property, and take the conveyance to himself, he who is entitled to the money may follow the same, and consider

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

the purchase as made for his use, and the purchaser as his trustee.

[Cited in Hutchins v. Heywood, 50 N. H. 498; Jackson v. Cleveland, 15 Mich. 103; McLaughlin v. Fulton, 104 Pa. St. 170; Sadler's Appeal, 87 Pa. St. 159; Zundell v. Gess (Tex. Sup.) 9 S. W. 880.]

2. A resulting trust will arise, where lands have been purchased by one partner, and paid for out of the funds of the partnership.

[Cited in Sherwood v. St. Paul & C. Ry. Co., 21 Minn. 130.]

3. The confession of the party in his answer to a bill, or in writing under his hand, that the money laid out belonged to the person, is sufficient evidence thereof.

4. The person entitled to the resulting trust, is not obliged to take the land, and to consider the purchaser as his trustee: but he may elect to take the money, and refuse the property.

[Cited in King v. Hamilton, 16 Ill. 197; Moffatt v. Shepard, 2 Pin. 68.]

5. Equity will not raise a use by implication, for a person who by law cannot hold it.

[Cited in Taylor v. Benham, 5 How. (46 U. S.) 270.]

6. Where the equity of each party is equal, the court will not deprive one party of the advantage he may have gained, by obtaining a legal estate in property, which was promised as a security for a debt due to each.

[Cited in Mathis v. Stufflebeam, 94 Ill. 483.]

[This was a proceeding by Thomas Philips & Co. against William Crammond, Willing, and others, creditors of Crammond and Samuel Mifflin.]

This case was argued in April or May, 1809, when the commissioner of the court was directed to state the accounts between the plaintiffs and Crammond, at certain periods, and also the manner in which the entries, respecting the estate called Sedgeley, the estate on Spruce street, and the vessels, were made on the books of Philips, Crammond, & Co., kept by Crammond. The report was made, and excepted to, but not argued, or deemed important. The court now pronounced an opinion and decree in the case.

WASHINGTON, Circuit Justice. It appears from the bill and answers in this cause, that some time in the year 1789, a commercial house was formed and established in Philadelphia, between the complainants, of Manchester in England, and the defendant, Crammond, in this city, in which the latter was to be one-third interested, and was to manage the affairs of the concern. This co-partnership continued until December, 1801, when it was dissolved. During its continuance, viz. in January 1795, Crammond, with the consent of his partners, purchased a lot of ground in Philadelphia, on Spruce street, and built thereon a dwelling-house and ware-houses, for the use, and with the funds of the partnership, but took the conveyance in his own name. As to this property there is no dispute, it being admitted to be partnership property when purchased, and a declaration of trust to the complainants having been since made. On the 28th

of March 1799, Crammond purchased a piece of ground on the Schuylkill, containing about twenty-eight acres, upon which he built a house for a country seat, and in other respects improved the same at considerable expense, to which he gave the name of Sedgeley. The purchase money for this property, and what was expended in improving it, was also drawn from the partnership funds, and the conveyance was made to Crammond alone. The first payment was made in the autumn of the same year. There were also a number of vessels employed in carrying on the trade of this concern, the whole of which were held in the name of Crammond, and as his separate property, though purchased and paid for out of the joint funds. It would appear that this company carried on their trade with various success, but that for some time before the dissolution, their losses were considerable, insomuch, that upon the final settlement which took place in December 1801, Crammond was found to be debtor to the house in a considerable sum. Previous to this settlement, and as early as the 11th of September preceding, Crammond, by letter to the complainants, informed them that he had, on that day, executed a deed of trust to them for all the real estate in his name, stating, that it belonged to them, and that the complainants had then in their hands sufficient proof that the property was theirs. On the 30th of December 1801, he executed a declaration of trust, in favour of the complainants, of the Spruce street property only, nor was any conveyance or declaration of trust at any time made in their favour, in respect to Sedgeley. He afterwards agreed to hold this latter estate as a tenant to the complainants, at a certain rent. He has always, since that time, acknowledged that Sedgeley belonged to the complainants, and in his answer he confesses the same, and that it was purchased and improved with the partnership funds. After the dissolution of the partnership, Crammond carried on business in his own name, and on his own account, until May 1805; when he stopped payment, and executed to three others of the defendants, a deed of assignment of all his real and personal estate, for the benefit of his separate creditors. Some time after this, Sedgeley was levied upon by the marshal of this court, to satisfy an execution issued upon a judgment obtained by the United States against William Crammond, and was sold and conveyed to the remaining defendant, Samuel Mifflin, who, in his answer, states that he is not bound to pay the purchase money, unless it shall appear, by due course of law, that the said estate was the property of Crammond, at the time the judgment was obtained. It appears, that during the partnership of Philips, Crammond, & Co., the accounts of the concern, under the management of Crammond, were annually transmitted by him to the complainants, upon which the profit and loss were ascertained, and

Crammond's proportion of profit was carried to his credit, and remained with the concern, as so much of his capital brought into the partnership stock.

By the report of the commissioner of this court, it appears, that on the books of the company kept by Crammond, an account was opened with each vessel purchased by him with the partnership funds, in which she was debited with the purchase money, and with her expenses and interest on such expenditures, and was credited with her earnings, and that upon the final disposition of such vessel, her account was closed, and the balance carried to the debit or credit of William Crammond. That in the same accounts, the Spruce street property is designated as "the estate on Spruce street," and the advances made on account of it are not charged with interest. That the accounts, as to this estate, are regularly continued in these books after the dissolution, and Crammond is individually debited and credited with sums expended by, or received from him on account of that estate, and is, at different times, before and after the dissolution, charged with the rent thereof. The Sedgeley estate, on the other hand, is in the same accounts called, "William Crammond's estate, Sedgeley," and in the balance sheet of 1800, sent to the complainants, amongst the debts owing to Philips, Crammond, & Co., Crammond is charged for sundry ships, and for the estate, called Sedgeley. The advances made for this estate, are charged with interest, and the account is balanced on the books, on the 31st of December 1801, with 43,096 dollars, against the estate, as to which no further entry is made until the 31st of December 1806, when rent for the same, for the four preceding years, is charged to Crammond, by whom all the intervening expenditures were paid.

Upon this state of the case, the question is, whether the prayer of the bill, which is for a conveyance of the Spruce street and Sedgeley estates, ought to be granted? Their right to the Spruce street estate being admitted by the defendants, and rightly so as in the opinion of the court, a decree in favour of the complainants, as to that, will of course be made. The merits of the claim, as to Sedgeley, stand upon different ground; and the first question, as to that, is, whether under all the circumstances of this case, a trust resulted to Philips, Crammond, & Co., out of whose funds that property was purchased and improved? The general principle is, that if a receiver, executor, factor, or trustee, lay out the money which he holds in his fiduciary character, in the purchase of real property, and take the conveyance to himself, he who is entitled to the money, which has been thus invested, may follow the same, and consider the purchase as made for his use, and the purchaser a trustee for him. Upon the same principle, I conceive that a resulting trust would arise to a partnership concern in lands purchased by one of the partners, and paid for out of the joint funds. As to the proof of the fact upon which this equity will arise, it seems to be settled, that if the purchaser confess in his answer, or in writing, under his hand, that the money so laid out, was the money of the person claiming the benefit of the purchase, it is sufficient to establish a resulting trust. Some of the cases, indeed, have gone farther, but it is unnecessary, in this case, for the court to go farther, as that fact is confessed by Crammond, in his answer, and is acknowledged in one of his letters. But this species of resulting trust is open to certain qualifications, amongst which it is proper to notice the following, viz.: that the person whose money was invested in the purchase, is not obliged to take the land, and to consider the purchaser as his trustee, but may elect to treat him as his debtor, and to claim the money instead of the property. As a consequence of this, and because the claim to a resulting trust is merely that of an equity, founded upon the presumptive intention of the parties, that equity may be rebutted, even by parol evidence, and circumstances to defeat it. If, for instance, the person for whose benefit the trust would otherwise be created, declares that the purchase was not made for him, or if both parties treat it as a purchase for the use of him to whom the conveyance is made, no resulting trust will arise.

This qualification of the doctrine seems to be decisive of the present case. Nothing can be more clear, than that the property in question was purchased and improved for the sole and separate use of William Crammond, and that his partners so understood and assented to it. The circumstances to establish these facts are conclusive. The nature of the property—a country seat, improved at an immense expense, in the vicinity of the place at which the purchaser alone resided, capable of affording to him an elegant luxury, but totally useless and unproductive to the concern, and out of the view and scope of the business in which the house was engaged. In the accounts kept by William Crammond, this estate is constantly designated as his, and he is made debtor to the partnership for all the advances made on account of it, and is charged with interest upon the same. The vessels, which it is admitted belonged separately to Crammond, though purchased with the partnership funds, are treated in the same manner. No rent was paid by Crammond for Sedgeley, or even charged, until long after the dissolution of the partnership, and when, it is probable, the ruined circumstances of Crammond suggested it as a prudent measure, to consider this estate as being held by him in trust for his former partners. These circumstances are greatly strengthened by contrasting the manner in which the Spruce street estate was treated

by the parties, with that observed in relation to Sedgeley. That consisted of houses adapted to the commercial purposes of the concern, and was so used. In the accounts, it is described as the estate on Spruce street. No interest is charged to Crammond upon the sum paid for it, but on the contrary, he is debited and credited with the different sums expended or received by him on account of the estate, and for rent after the dissolution of the partnership. The reason of all this is obvious; for this property was purchased with the approbation of the complainants, for the joint use of the concern, whereas it is not pretended in the bill, or in the answer of Crammond, that Sedgeley was purchased for any but the use of the purchaser.

But there is another reason why a resulting trust could not arise to the complainants, which is, that at the time the purchase money for Sedgeley was paid, the complainants were aliens, and incapable of holding real estate in Pennsylvania. The act of the 11th of February 1789, permitting aliens to purchase and to hold real estates, expired some time in the year 1797, prior to the time when this purchase was made. The act of the 11th of April 1799, goes no farther than to save the rights, intermediately acquired by aliens, under any bona fide contract, patent, or deed. But since it is unquestionable, that the payment of the money can alone create a resulting trust, which, in this case, was not done until after the conveyance was made to Crammond, the purchase in March 1799, cannot be considered as a contract made for the benefit of the partnership, within the words or intention of this law. This being the case, equity will not, by implication, raise a use for a person, who, by law, is incapable of holding.

If, then, the complainants' claim cannot be supported upon the ground of a resulting trust, are they entitled to call for a specific execution of the agreement of Crammond to stand seised of Sedgeley to their use, supposing the objection of alienage out of the way? This agreement is in writing, and being made upon a valuable consideration, there would be no difficulty in decreeing a conveyance by William Crammond, if the question were only between him and the complainants. But the claim of the trustees for the general creditors of Crammond is interposed, and they being also purchasers for a valuable consideration, they have equal equity with the complainants. It is true, that the equity of the complainants is prior to that of the trustees, and would of course prevail against them, if the question were, which of them is entitled to call for the legal estate? Or if the complainants had lent their money, on a promise by Crammond to give a mortgage for its secu-

rity, or to convey the property absolutely to them, they would have had superior equity, and the court would have considered the latter as trustees for them. But in this case, the promise made to the complainants, and the conveyance actually made to the trustees, both being in consideration of pre-existing debts, the equity of each is equal, and this court will not take from the trustees the legal advantage, which their vigilance has conferred upon them.

Nothing need be said as to the title of Mifflin, or, indeed, can be decided upon the evidence in this cause. If the right of the trustees be better than that of the complainants, the latter cannot succeed.

Decree, that Crammond convey the Spruce street property to the complainants, and that the trustees release all their right and claim on the same. Bill to be dismissed, as to Sedgeley, but without costs.