## HUTCHINS *v.* HEYWOOD, ADR.

The doctrine of the Statute of Uses, 27 Hen. VIII, ch. 10, is recognized in the jurisprudence of this State.

Three things are essential to the effectual operation of this statute, viz., a *person seized* to the use of some other person, a *cestui que use in esse,* and a use *in esse;* and when these three things concur, the use is said to be *executed,*—that is, the possession and legal estate of the lands out of which the use was created is immediately taken from the feoffee to uses, and transferred *by mere force of the statute* to the *cestui que use,* who thereby takes, not a seisin and possession in law only, but an actual seisin and possession in fact.

A *trust,* technically speaking, ordinarily exists only where the use is incapable of being executed, and so the *legal* estate is necessarily left as at common law.

If the beneficial interest which one person has in land which in the eye of the common law belongs to another is a *permanent* enjoyment of the benefits or profits of the land, it is a *use;* if the interest is for a *temporary* purpose, it is a *trust.*

A resulting trust is created, by implication of law, in favor of him who pays the consideration; and the implication, which may ordinarily be rebutted by showing a different intention of the parties, will not be controlled nor avoided by proof of a fraudulent intent contrary to the implication.

The estate and interest of a *cestui que use* may be taken by attachment, by writ of entry, by the levy of an execution, or any other appropriate proceeding at law, without resort to remedies afforded by a court of equity.

WRIT OF ENTRY, by Mary C. D. Hutchins, plaintiff in review, against Henry Heywood, administrator of Samuel Wesson, to recover certain land in Lancaster village. Original writ dated June 25, 1866. Part of the demanded premises was conveyed by Joseph Chesman to Abel Wesson, April 15, 1828, and said Abel conveyed the same to Samuel Wesson, the intestate, November 25, 1830. Another part was conveyed by Benjamin Hunking to said Samuel, October 11, 1834, and the remainder by Ephraim Cross to said Samuel, October 25, 1834. John Dewey recovered judgment against Asa Wesson, son of said Abel and brother of said Samuel, at Coös court of common pleas, May term, 1846, upon which an execution issued; and the same was levied on the demanded premises, June 27, 1846. Said Asa died May 8, 1849. Said Abel died many years before. Said Dewey died since, and the plaintiff claims under his will. The consideration of the deed from Chesman to said Abel was a farm on the Whitefield road in Lancaster called the Wesson farm, upon which said Asa resided from about 1819 until it was conveyed to Chesman, April 15, 1828. Said Wesson farm was conveyed to said Abel, October 28, 1818. He conveyed it to his sons, the said Asa and Samuel, jointly, December 8, 1818, and they

reconveyed to their father, March 3, 1820, who held the title until the exchange with Chesman as aforesaid. Said Asa removed from the Wesson farm to the demanded premises about the time of the exchange, and occupied the same till the time of his death. Said Asa was considerably in debt ever after 1819,—the time he moved into Lancaster.

The plaintiff claims that Asa Wesson was the real owner of at least one half of the Wesson farm during all the time he resided there; that he negotiated the exchange with Chesman; that he paid Chesman the sum of two hundred dollars and upwards, as boot between the places; that he purchased the parcels conveyed by Hunking and Cross, and provided the funds to pay for the same; that he always paid the taxes on the demanded premises; that he set out an orchard, laid down an aqueduct, erected a barn and an addition to the dwelling-house, made extensive and costly repairs to the mills and dam, and managed and controlled the premises as he pleased, without ever paying any rent to any person; that he was the real owner thereof; that the conveyance of the Wesson place to his father in 1820 was without consideration, and made to hinder, delay, and defraud his creditors; and that he procured the demanded premises to be conveyed to his father and brother as aforesaid, with the same intent and purpose, without consideration moving from them, of all which they were fully aware; that said Abel and Samuel held the title to said premises, upon a secret trust for the use and benefit of said Asa and in fraud of his creditors.

The foregoing claim of the plaintiff is denied by the defendant; but the defendant contends that, admitting the facts to be as the plaintiff claims, she cannot maintain this action, because the legal title to the demanded premises was never in said Asa, and that her remedy, if any, is in equity.

After the opinion of the court hereon, it is agreed either party may go to the jury.

*Ray & Ladd* (with whom were *J. & J. H. Benton, Jr.*), for the plaintiff.

The plaintiff claims that the title to the demanded premises was held by Samuel Wesson at the time of the extent of Dewey's execution, upon a trust for the use and benefit of Asa; that Asa was the real owner—the *cestui que trust*, in possession. That being so, upon the doctrine of the well considered case of *Pritchard* v. *Brown*, 4 N. H. 397, his interest passed by the extent. The same doctrine is reaffirmed in *Edgerly* v. *Sanborn*, 6 N. H. 397, and *Upham* v. *Varney*, 15 N. H. 462, and has never been questioned or doubted in this State, as we can find.

If the law is so in regard to a trust created for a legal and proper purpose, much more must it be held, where the purpose of creating the trust is, as claimed in this case, to hinder, delay, and defraud creditors.

By the statute in force at that time, and still in force, an attachment of real estate holds all the debtor's interest in the same to satisfy the judgment—Rev. Stat., chap. 184, sec. 5; and such seems to be the

*common law* of New Hampshire.   " It seems to have been universally understood in this State, for a period running back beyond the memory of any who now belong to the profession of the law, that all real estate, of every description, was subject to be taken by an execution to satisfy a debt."   RICHARDSON, C. J., in *Pritchard* v. *Brown.*

*Wm. Heywood and Burns & Heywood*, for the defendant.

The Statute of Uses, 27 Hen. VIII, applies only to *uses* limited according to the rules of the common law,—1 Cruise's Digest, ch. 4, 390–408; *Hayes* v. *Tabor*, 41 N. H. 521; 4 Kent's Com., title, Uses and Trusts, 288–301; 2 Washb. on Real Property, ch. 2, sec. 2,—and does not apply to trusts which still continue separate and distinct from the legal title, and are taken notice of and supported by the court of chancery.   1 Cruise's Digest 411–437; *Chamberlain* v. *Crane*, 1 N. H. 64; *Ayer* v. *Ayer*, 16 Pick. 327; *Parker* v. *Converse*, 5 Gray 339; 4 Kent's Com. 301–313; Washb. on Real Property, ch. 3.

A trust is described, in 1 Cruise's Digest 411, as " a right in equity to take the rents and profits of lands, whereof the legal estate is vested in some other person; to compel the person thus seized of the legal estate, who is called the trustee, to execute such conveyances of the land as the person entitled to the profits, who is called the *cestui que trust*, shall direct."   There are three direct modes of creating a trust: 1st. By a use limited upon a use, p. 412.   2d. On a limitation to trustees to pay the rents and profits to a third person, p. 413—*Upham* v. *Varney*, 15 N. H. 466; *Hayes* v. *Tabor*, 41 N. H. 521; *Troy* v. *Haskell*, 33 N. H. 533; *Ayer* v. *Ayer*, 16 Pick. 327; *De Wolf* v. *Brown*, 15 Pick. 462. 3d. A limitation of a term of years in trust, p. 420.   " Besides these direct modes of creating trust estates, there are several other cases where trusts arise from the evident intention of the parties and the nature of the transaction, *which are enforced in equity*, and called resulting or implied trusts," p. 421.   Thus, in a contract (not within the statute of frauds) for a purchase of land, a trust results to the purchaser, and the vendor becomes his trustee.   This is exclusively a case of equity jurisdiction in this State.   *Ela* v. *Pennock*, 38 N. H. 154.

Where an estate is purchased in the name of one person and the consideration paid by another, there is a resulting trust in favor of the one who paid the consideration.   The person who holds the title becomes his trustee, &c., p. 422; which is the case at bar.

By a purchase of real estate by a trustee with trust money, such a trust is a matter of exclusive equity jurisdiction in this State.   *Kimball* v. *Bellows*, 13 N. H. 58 (see pp. 70, 71); *Hill* v. *McIntire*, 39 N. H. 410; *Sparhawk* v. *Allen*, 21 N. H. 9.   By a conveyance without consideration, there being no trust declared: this is also a matter of equity jurisdiction in this State.   *Graves* v. *Graves*, 29 N. H. 129; *Farrington* v. *Barr*, 36 N. H. 86.   In the early history of this State, our courts had no chancery powers.   In the case of *Scoby* v. *Blanchard*, 3 N. H. 170, the defendant's title was a resulting trust.   The plaintiff purchased the legal title of the trustee, with full knowledge of the defend-

ant's equitable title; and the decision allowing the defendant to defend his possession under his equitable title as against the legal title is put upon the ground that the plaintiff's purchase of the legal title was a fraud upon the defendant, and that the defendant then had no remedy except in a court of law. This case was followed in *Pritchard* v. *Brown*, 4 N. H. 397; *Hadduck* v. *Wilmarth*, 5 N. H. 181 (see p. 190); *Odiorne* v. *Lyford*, 9 N. H. 502 (see p. 510); *Cutting* v. *Pike*, 21 N. H. 347. By the act of 1829, the chancery power of the superior court extended merely to charitable uses. Laws of N. H., 1830, p. 511, sec. 9. By the Act of 1832, sec. 9, p. 75, the chancery powers of that court included not only charitable uses, but "also all cases of fraud, trust," &c. Since this last act, the supreme court of the State have exercised the powers of a court of chancery over trusts, whether direct trusts or resulting or implied trusts. See *Page* v. *Page*, 8 N. H. 187; *Parsons* v. *Parsons*, 9 N. H. 309; *Kimball* v. *Bellows*, 13 N. H. 70, 71; *Dow* v. *Jewell*, 18 N. H. 340; *Johnson* v. *Cushing*, 15 N. H. 298; *Ela* v. *Pennock*, 38 N. H. 154. And the distinction taken above, between a use which is executed under the statute of uses, and a trust which is to be enforced in a court of chancery, is fully recognized. In the case of *Ela* v. *Pennock*, 38 N. H. 154, the cases of *Scoby* v. *Blanchard*, *Hadduck* v. *Wilmarth*, and *Cutting* v. *Pike* are fully discussed; and the only view upon which those decisions are supported is, that a person who obtains the legal title in fraud of the equitable title is estopped by the fraud from setting it up against the equitable title, and that formerly the courts of this State had no general jurisdiction in equity. "There is no longer any reason for attempting to afford, in suits at law, the redress which belongs appropriately to the jurisdiction in equity. See p. 159. The case of *Lyford* v. *Thurston*, 16 N. H. 399, was decided without regard to the question of jurisdiction of the court, upon the authority of the cases of *Scoby* v. *Blanchard*, 3 N. H. 170, and *Pritchard* v. *Brown*, 4 N. H. 397. From the authorities above cited, a court of law clearly had not jurisdiction, and the authorities there cited did not support the decision; and that case is directly opposed to the case of *Ela* v. *Pennock*.

In Vermont it is well settled, that the equitable title cannot prevail over the legal title in a suit at law, in the case of *Dewey* v. *Long*, 25 Vt. 564, where the precise question at bar was decided. *Buck* v. *Gilson*, 37 Vt. 653. See English authorities—*Roe ex de. Reade* v. *Reade*, 8 T. R. 118; *Doe ex de. Hodsden* v. *Staple*, 2 T. R. 684; *Goodtitle* v. *Jones*, 7 T. R. 47; *Bowerman* v. *Sybourn*, 7 T. R. 2.

In Massachusetts the tenant cannot defend in a real action by showing that demandant held the land subject to a resulting trust in favor of the tenant. *Crane* v. *Crane*, 4 Gray 323; *Trull* v. *Skinner*, 17 Pick. 213. And the *cestui que trust* cannot maintain a real action, as that requires the legal title. *Chapin* v. *Chicopee*, 8 Gray 580;—see, also, *Wright* v. *Dame*, 22 Pick. 55; *Whitten* v. *Whitten*, 3 Cush. 194. In Maine, resulting trusts are matters of equity jurisdiction; and there are a great many cases, commencing with *Buck* v. *Pike*, 2 Fairf. 9. In the cases of *Tappan* v. *Deblois*, 45 Me. 131, and *McLarren* v. *Cutler*,

51 Me. 407, it was directly decided that the supreme court has jurisdiction as a court of equity of all cases of trusts, whether arising by implication of law, or created by deed or will; and in *Cary* v. *Whitney*, 48 Me. 516 (see p. 530), that a defence cannot be made under the equitable title against the legal title in a suit at law. In New York, prior to the adoption of the code, resulting trusts were matters of equity jurisdiction. *Harder* v. *Harder*, 2 Sanford Ch. 17; see *Crary* v. *Goodman*, 12 N. Y. 266—S. C. 9 Barb. 657. In Maryland, where the *cestui que trust* dies without heirs, the land held in trust escheats; but in ejectment by the trustee or his grantee against the person claiming under the escheat, the legal title will prevail. The defendant's remedy is in equity. 10 Gill & Johnson 443.

In this case no question of fraud arises. This is not a case in which a debtor conveys his real estate to delay and hinder creditors, where the deed of conveyance is void because fraudulent. Here the title to the land in question never was in Asa Wesson, the debtor; but if it should appear that he, in fact, paid the purchase money, or part thereof, at the time the title was conveyed to the intestate, then a resulting trust arises in his favor, liable to be taken in execution by his creditors; and the question here arising is, whether the enforcement of that equitable title is a matter of exclusive equity jurisdiction, or a matter of concurrent jurisdiction in the courts of chancery and at common law.

It has already been decided in this State that it is a matter of equity jurisdiction, and the defendant claims that jurisdiction to be exclusive.

FOSTER, J. For the purposes of this case only, it being conceded that the facts are truly represented by the demandant, the question arises whether a creditor of Asa Wesson is entitled to satisfaction of his debt out of the estate which the deceased held in his lifetime, under cover, and secure against lawful claims and obligations, while enjoying to the fullest extent the avails, profits, and advantages of the property. And if it shall be found that the demandant has *any* remedy, the further question is, whether it may be pursued in the courts of law, or whether he must resort to proceedings in chancery.

To determine these inquiries, it becomes necessary first to ascertain what was the legal status and position of Asa Wesson with regard to the demanded premises. The interest of Asa Wesson in the lands which were conveyed by Abel Wesson and by Hunking & Cross to Samuel Wesson in 1834, was either a *use* or a *trust*, technically speaking.

Prior to the Statute of 27 Hen. VIII, chap. 10, the words "use" and "trust" were regarded as convertible terms. And although, even in that statute, the word "trust" is mentioned as well as the word "use"—for it classes "trusts," "uses," and "confidences" in one category, and undertakes to apply the same remedy to all by uniting the legal with the equitable interest, and thus creating a new legal estate (see 1 Sand., Uses and Trusts, 70–84) —still the distinction between the two terms is practical, substantial, and important. A careful regard for that distinction will serve to relieve the present case from difficulty. And because in none of our

reported cases this distinction is clearly presented, we propose briefly to illustrate it at this time.

The elementary writers call our attention to three things as essential to the effectual operation of the statute of uses: namely, a person *seized* to a use, a *cestui que use,* and a use *in esse*—1 Cruise Dig. 349; 2 Washb. Real Prop. *113; and when these three things concur, the use is said to be *executed*—Bac. Law Tracts 351; 1 Sand. 97, 98; 2 Washb. Real Prop. *119; that is, " the statute comes in and actually transfers the seisin and possession from the feoffee to use, to the *cestui que use,* to all intents and purposes, without any actual entry being necessary to give him the seisin. It is not merely a title, but an actual estate, which is thus created in the *cestui que use,* as effectually as if it had been done by a conveyance with livery of seisin at common law." 2 Washb. R. P. 120; 1 Cruise Dig. 358; 4 Cruise Dig. 96–98; Bac. Law Tracts 338; 1 Sand., Uses and Trusts, 119; Co. Litt. 266 *b.; Durant* v. *Ritchie,* 4 Mason 45; *Upham* v. *Varney,* 15 N. H. 462; *The New Parish in Exeter* v. *Odiorne,* 1 N. H. 236.

When, therefore, the three elements referred to existed, the use was said to become executed, and full effect was given to the statute; and thereupon only one interest or estate remained. But a *trust,* technically speaking, was and is practically different. A *trust* may, and perhaps ordinarily does, exist only where the use is incapable of being thus executed; and so the *legal* estate is necessarily left as at common law. Adams on Ejectment 82, *et seq.*

In such case, says Mr. Washburn, " equity, perceiving that to allow the holder of the legal estate to have the beneficial use of it was contrary to the intention of the parties, interposed to hold the tenant of the legal estate a trustee for him who was entitled to the beneficial use of it; and the consequence was, that while one party had a right to the seisin and possession of land as at common law, equity regarded him for whose use the land was designed as the rightful owner thereof; and in this way there early grew up a double ownership of lands thus situated—the *legal* and the *equitable* one.

" Thus it was held, that as a use was executed by uniting the seisin which was in one with the use which was in another, and as there could be no seisin, properly speaking, of a use,—if there were a feoffement to A, to the use of B, to the use of C, the seisin in A passed to and was executed to the use in B. But as only a use was given to B, it was held that the seisin which the statute united to the use in B did *not* pass from him to C, and it consequently left the seisin in B, as the legal owner.

" In order, however, to give effect to the second part of the limitation, equity came in and required B (in whom, as to his relations with A, the use was executed) to hold the estate to the use of C; and called this a *trust.*" 2 Washb. Real Prop. 425, 426; *Matthews* v. *Ward,* 10 Gill & Johns. 443.

The following illustrations may be given: Lands are given to one to do certain acts in respect to the same for the benefit of a third person, a *feme covert* for instance, which require him to hold the seisin and

legal estate. In such a case, inasmuch as to execute the use in the one for whose benefit the land was granted or devised would defeat the purposes of the grant or devise, the seisin is held to remain in the grantee or devisee, while equity requires him to perform the duty or confidence imposed upon him under the name of a *trust.*

So, where land is given to A *for a term of years* in trust for B, it is a technical *trust,* since the statute of uses only executes a use in cases where a seisin is united with it.     2 Bl. Com. 333.

If the beneficial interest which one man has in land which in the eye of the common law belongs to another is a *permanent* enjoyment of the benefits or profits of the land, it is a *use;* if the interest is for a *temporary* purpose, as the raising of a sum of money out of the land, it is a *trust.*

Mr. Spence (Eq. Jur. 448) distinguishes the two estates as, the one being " an use, or permanent trust," the other, a " temporary, special, or active trust,"—which is a tolerably clear distinction, notwithstanding the customary, though unnecessary, confusion of terms.     See 2 Washb. Real Prop. (3d ed.) *168.     Mr. Sanders defines a *trust* to be " a right on the part of the *cestui que trust* to receive the profits and dispose of the lands *in equity.*"  1 Sand., Uses and Trusts, 267.   A devise to trustees and their heirs for certain uses, and in trust to preserve contingent remainders, confers legal estates upon the *cestuis que use,* unless the performance of some duty by the trustees requires them to retain the legal estate.     *Webster* v. *Cooper,* 14 How. 488.     And so it is said, in *Stanley* v. *Colt,* 5 Wall. (U. S.) 119, where a trust is created by will, and the trustees have *active duties* to perform, the legal estate vests in them.     Where it is *necessary,* to effect the object of the grantor or devisor, that the legal estate shall remain in the trustee, or where the trustee is vested with discretionary power as to the appropriation of the estate, income, or beneficiary interest, the statute does not execute the use, but the seisin and legal estate remain in the trustee.     *The New Parish in Exeter* v. *Odiorne,* 1 N. H. 236.

But, as we have seen, a technical, use, executed by operation of the statute, vests in the beneficiary an actual seisin and a *legal* estate ; and thus the purpose of the statute is effected, which is, says Mr. Cruise, " entirely to abolish uses," or, in the language of Lord BACON, which is adopted by Mr. Sugden, " to turn equitable into legal estates."     1 Cruise Dig. 349 ; Bac. Law Tracts 332 ;  Gilbert's Uses (Sugd. ed.) 139, note.

Viewed in the light of all these considerations, what was, *in fact,* the interest and estate of Asa Wesson in the demanded premises ? Ostensibly, it was nothing.     Actually, it was the realization and enjoyment of the fruits of a successful fraud.     In common parlance, it might be called a resulting trust ; and so in fact it was, if the terms " trust" and " use" are legally convertible and synonymous.     But no matter what you may *call* it : it was a *use,* and a use executed by the Statute of 27 Hen. VIII, chapter 10, which has been generally adopted in the New England and Middle States, and expressly recognized as the law of New Hampshire.     *The New Parish in Exeter* v. *Odiorne,* 1 N. H. 237 ; *French* v. *French,* 3 N. H. 240 ; *Wilcox* v. *Wheeler,* 47 N. H. 490.   And

the title of Asa Wesson was a *legal* title and seisin in possession, of the estate.

A resulting trust, which has practically all the characteristics of a use executed, will generally be presumed, in favor of him who pays the consideration, unless a different intention between the parties be disclosed. It is not an express creation by the terms of a conveyance or a devise, but an implication of law. *Jenkins* v. *Pye*, 12 Pet. 241; *Hoxie* v. *Carr*, 1 Sumner 174; *Phillips* v. *Crammond*, 2 Wash. C. C. 441; 2 Washb. Real Prop. (3d ed.) *172. But the implication of law will not be controlled nor avoided by a fraudulent intention of the parties, who may be silent with regard to the facts, or seek to cloak them with deceitful pretenses. *Scoby* v. *Blanchard*, 3 N. H. 170; Sugd. Vendors 416; *Pritchard* v. *Brown*, 4 N. H. 401. Such an estate is, of course, independent of and uncontrolled by the statute of frauds. Hilliard on Vendors 148; 2 Washb. Real Prop. (3d ed.) *172.

It appears from the case that Asa Wesson negotiated the exchange of farms with Chesman; that with his own money he paid " two hundred dollars and upwards, as boot between the places;" that he provided all the funds for the purchase of the remainder of the property; that he remained in actual possession till his death, about three years after the levy of Dewey's execution; that he paid all the taxes on the premises, and cultivated, improved, and used them as his own, taking the profits without restriction or interference; and that the ostensible title was placed in his father and brother for no other purpose than to hinder, delay, and defraud his creditors.

This is not the case where the father and brother held the land by grant for a term of years: *apparently* they were seized in fee; and *actually*, the beneficial interest of Asa was without limitation of time;— they did not hold it for the use or advantage of any one situated like a *feme covert* under any legal disability; they did not hold it for a temporary purpose, as for the raising of a sum of money out of the land or its proceeds; no active duty was cast upon them; they were not vested with discretionary power as to the appropriation of the estate, income, or beneficiary interest; it was not *necessary*, in order to effect the object of the grantors, that the legal estate should remain in the trustees, but it was only necessary and essential that it should so remain for the successful perpetration of a gross fraud; it was not, to use the language of Mr. Spence, " a temporary, special, or active trust," but " an use or permanent trust." Therefore the statute took effect immediately upon the conveyance of the estate to the trustees, executed the use, and united the use with the possession, in an actual seisin and legal estate. In the words of Lord St. Leonard: " When the statute of uses came, and made uses possessions, and gave to the equitable owner, to him who had the use or benefit, the legal estate, it was a simple transfer by force of the statute, of the legal estate, which we call the *seisin*, to serve those uses." *Egerton* v. *Brownlow*, 4 House of Lords Cases 206.

If these deductions are correct, it would seem to follow, as a logical conclusion, that notwithstanding the extensive equity jurisdiction of

this court, the redress which the demandant seeks does not belong, necessarily nor exclusively, nor even appropriately, to the jurisdiction of a court of equity, since there can be no need of resorting to equity where the remedy by the course and proceedings of the common law is full, complete, and adequate.   2 Washb. Real Prop. 160, 164.

Sir Wm. Blackstone uses this language : " The statute executes the use ; that is, it conveys the possession to the use and transfers the use into possession, thereby making *cestuy que use* complete owner of the lands, *as well at law as in equity.*   The statute having thus not abolished the conveyance to uses, but only annihilated the intervening estate of the feoffee and turned the interest of *cestuy que use* into a legal instead of an equitable ownership, *the courts of common law began to take cognizance of uses, instead of sending the party to seek his relief in chancery.*"   2 Bl. Com. 333.

As the *cestui que use* becomes the *legal* owner of the actual estate, it follows that he takes it *cum onere ;* and as such legal estate is recognized in its protection, so it must be recognized with respect to legal claims against it.

"As the use and the land," says Blackstone (2 Com. 333), "were now convertible terms, they became liable to dower, courtesy, and escheat."   It would not be contended that resort should be had to equity to recover dower in these lands.

In *Pritchard* v. *Brown*, 4 N. H. 397, the distinction between a use and a trust, as we have declared it, does not seem to have been regarded. Practically, and properly speaking, that was the case of a resulting use, though the word " trust" seems to have been applied as a sort of generic and comprehensive term to the estate which would have been more appropriately described by the term " use."   Nevertheless, the facts of the case, as to the situation and condition of the estate there denominated a trust, were in all essential particulars the same as in the present case.   And it was there held that " the interest of a *cestui que trust* in land will pass by the extent of an execution upon the land as his estate."

Mr. Ch. J. RICHARDSON goes so far as to say, that while the statute of Feb. 15, 1791, " has seemed to show that nothing less than an estate in fee simple was liable to ·an extent, yet, in practice, almost every species of interest which a man can have in land has been made so liable," page 403.

It is common knowledge that estates for life, remainders, reversions, and even a mortgagor's right in equity to redeem mortgaged land, have always been considered liable to an extent upon execution " for a period running back beyond the memory of any who now belong to the profession of the law."

The case of *Pritchard* v. *Brown* has been followed and affirmed in *Upham* v. *Varney*, 15 N. H. 462, where it is held that the interest of a *cestui que trust* in land will pass by the extent of an execution upon the land as his estate.   In this case, also, Mr. J. GILCHRIST uses the words " use" and " trust" as convertible terms—declaring, at the close of the opinion of the court, " the *cestui que trust* in this case had, in our

opinion, the legal estate.   The *use* was executed in him by the statute."
In that case, by the terms of the devise, the trustees were required
"to permit the said Frederick and his wife, and the survivor of them,
to occupy said land and receive the income thereof, they paying the
expenses of carrying on the same, including the taxes."   The tenant
claimed the demanded premises for the life of Frederick, by virtue of
the levy of an execution on his interest in the land under this devise.

The learned judge remarks : "Where an estate is devised to trustees,
with a requisition to do any act to which the seisin and possession
of the legal estate are necessary, although they be directed to permit
the rents and profits to be received by a third person, still that third
person will only be entitled to a trust estate ; for, otherwise, the trus-
tee would not be able to execute the trust.   1 Cruise, title Trust,
ch. 1, § 24.   In this case, the seisin of the legal estate is not neces-
sary to enable the trustee to execute the trust.   The trustee was not to
receive and pay over the rents, or to see to the application of the
income.   There is no occasion for his interfering to do any act whatever.
His duty is *not* to interfere, but to permit the *cestui que trust* to receive
the income.   The latter has an estate assignable by his deed, and
which vests in his assignees by his bankruptcy, and it undoubtedly
passes by an extent of an execution.   It may further be remarked
upon this subject, that an interest of this description has, for a long
period, been held to be a use executed by the statute of uses"—citing
*Broughton* v. *Langley*, 2 Ld. Raym. 873, and other English cases.

The case of *Ela* v. *Pennock*, 38 N. H. 154, relied upon by the ten-
ant, has no bearing, as it seems to us, upon the present case.   The
effort there was to recover by writ of entry the supposed equitable
estate of the tenant under an *unexecuted agreement* to convey lands.
The right of the party to require a conveyance can only be determined
upon proceedings in equity to compel specific performance of the con-
tract to convey.   Until that right shall in some way be determined,
until the obligation of the trustee is recognized by his own acquies-
cence or the judgment of a court of equity, there can be no legal or
equitable estate upon which the statute of uses can operate.

The distinctions between a trust and a use, as here expounded, are
very plainly recognized in *Hayes* v. *Tabor*, 41 N. H. 521, 525, 526.

It was decided in this State, so long ago as 1825 (*Scoby* v. *Blan-
chard*), that a party who obtains a legal title by fraud is estopped to set
it up as against an equitable title in a suit at law.   The reason as-
signed by RICHARDSON, C. J., is, because, as the law then stood, the
defendant in that case might have been without remedy if he had not
been allowed to defend on his equitable title in a suit at law, for there
was then no general jurisdiction in equity to which he could resort.

And the same considerations controlled the decision in *Hadduck* v.
*Wilmarth*, 5 N. H. 181 (1830).

The reason for the principle resorted to in those cases has ceased
with the enlargement of equity powers.

And it might seem illogical and unscientific to place a decision
solely upon grounds and reasons which were adopted *ex necessitate*,

when those grounds and reasons are no longer required for the foundation of a decision, by reason of the new tribunal, so to speak, supplied for the occasion by the enlarged equity jurisdiction of the court.

But before this equity power was conferred, the rule was established; and though the *reason* has ceased, the rule has since been followed and adopted invariably (see *Cutting* v. *Pike*, 21 N. H. 347), and to such an extent that it would be unwise, impolitic, and unjust to depart from it now; for to do so would be to unsettle titles founded in and reposing upon the rule thus firmly fixed.

We are aware that the state of law and of the authorities upon the subject of the present consideration is not uniform, and that the cases cited by the defendant, in his very able argument, from the Massachusetts and New York reports, tend to sustain his view of the case; but we regard the law as clearly settled in the opposite direction in this State.

The result of these considerations is, that if the facts conceded for the purposes of this case be established, the demandant is entitled to enforce her rights to the land in question, by writ of entry at common law.