[No. 4260.   Decided April 7, 1903.]

B. FUNK *et ux.*, *Appellants*, v. GUS HENSLER *et ux.*, *Respondents*.

APPEAL — TRIAL DE NOVO — INSUFFICIENCY OF EVIDENCE.

Where the evidence is conflicting, but the preponderance does not seem to be clearly against the findings of the trial court, such findings will not be disturbed on appeal, even in cases triable *de novo*.

SAME — IMPROPER ADMISSION OF EVIDENCE — REVERSAL.

When a cause is triable *de novo* on appeal, it will not be reversed for the improper admission of testimony when there is sufficient other competent testimony in the record to sustain the judgment.

RESULTING TRUST — PURCHASE OF REALTY.

The fact that plaintiff paid all the money required as the purchase price of a tract of land conveyed to defendant would not create a resulting trust in favor of plaintiff for the whole of such land, when the agreement between the parties was that plaintiff was to have but one-half of the tract for the money advanced by him.

Appeal from Superior Court, Skagit County.—Hon. JEREMIAH NETERER, Judge.   Affirmed.

*Clise & King* and *Million & Houser*, for appellants.

*Quinby, Wells & Brawley*, for respondents.

The opinion of the court was delivered by

HADLEY, J.—Appellants brought this suit, and asked that respondents be declared to hold certain real estate in trust for appellants, and that they be required to convey the same to the latter.  Appellants are husband and wife, and respondents are also husband and wife.  The complaint alleges that appellants desired to purchase certain real estate in Anacortes, but were unable to negotiate there-

for for the reason that they could not ascertain the where-
abouts of the owner of the property; that, while endeavor-
ing to find the location of such owner, respondent Gus
Hensler learned of appellants' desire to purchase the prop-
erty, called upon them, and told them that he knew the
owner of the property, and if they would authorize him,
as their agent, to negotiate the purchase for them, he
would endeavor to do so to their best advantage; that by
reason of such representations, and being moved thereby,
they authorized said Hensler to make a purchase of the
property for them, or such portion thereof as he might
be able to purchase in pursuance of instructions they
then gave him as their agent; that by said instructions
they informed said Hensler, as their agent, that they had
$600 to invest in said property, and instructed him to
purchase the south half of lots 18, 19 and 20 in block 34
of the city of Anacortes, and as much more of said lots
as said $600 would buy; that they thereupon gave him
their check for $600 for the said purpose; that he immed-
iately negotiated a purchase of the whole of said lots for
the $600 so furnished him, and took a deed therefor in
his own name; that thereafter, in violation of his trust
and of the confidence reposed in him by appellants and
with intent and design to take advantage thereof, he rep-
resented to appellants that he was required to pay $600
for the south half of said lots, which south half he then
conveyed over to them in pretended compliance with his
trust; and, after the last-mentioned conveyance was made
appellants were informed of the real facts, and, immedi-
ately after learning them, demanded of said Hensler that
he convey to them the remaining portion of said lots—
the north half thereof—which demand was refused.   The
only allegation of the complaint involving respondent

Annie Hensler is that she claims a community interest in the property, and that any interest she may have therein was acquired with full knowledge of the above alleged rights of appellants. Respondents answered the complaint separately. Annie Hensler denies the allegations of the complaint, except that she admits she claims a community interest in the property. Gus Hensler denies the material averments of the complaint, and affirmatively avers that about the last of the year 1897, or early in the year 1898, he began negotiations for the purchase of the whole of the lots aforesaid; that early in the year 1898 he submitted a price of $700 on condition that the major part thereof should be paid by deferred payments; that the offer was declined, and he then offered $600 cash, which was accepted, with the promise that the deed of the vendor should, as soon as possible, be sent to the banking house of Schricker & Andrews, at La Conner, Wash., where payment was to be made; that after this time he learned that appellant V. Funk desired to purchase the south half of said lots, and he thereupon saw the latter, and informed him that he (said respondent) was the owner, or was about to become the owner, of the lots; that said appellant then offered to purchase the south half of the lots, and asked the price; that said respondent asked him $700, which he declined to pay, but afterwards offered $600, which offer was accepted; that on or about the 27th day of July, 1898, said respondent received notification that the deed aforesaid had been sent to the bank, but on inspection it was found not to be properly drawn; that the deed was returned to the grantor, and on August 13th following a new deed, bearing the same date as the former one, was sent to the bank; that after the return of the defective deed, and before the corrected one was forwarded, said respond-

ent, being short of cash at the time, stated to said appellant that it would be an accommodation if he would advance the amount of the purchase price agreed upon, so that said respondent could have it at the bank when the corrected deed should arrive; that said request was granted on or about the date alleged in the complaint, and a check for $600 was handed said respondent on or about August 6, 1898, which was indorsed and sent to the bank; that, at the time the check was delivered, said appellant requested said respondent to make out the deed for the south half of said lots to appellant B. Funk, the wife of the former, and that the same was so made out and delivered by both respondents on August 15, 1898; that, at the time of purchasing said south half of said lots, appellants well knew that said respondent was or soon would become the owner of said lots, and that no mention was evermade by either appellant of purchasing more than the south half of the lots; that said respondent never acted as the agent of appellants, or either of them, in said transaction, or in any transaction relating to the lots, and he was never requested to act as such agent; that no payment or offer of payment or compensation has ever been made for services of said respondent, notwithstanding the fact that he was at considerable expense in obtaining title, including one trip to Vancouver, British Columbia. Upon the above issues the cause was tried by the court without a jury, resulting in a judgment and decree that appellants have no right, title, or interest in or to the north half of said lots, and that the same is the property of respondents. From said judgment this appeal was taken.

The assignments of error are almost wholly based upon exceptions to the court's findings, and upon its refusal to find as requested. We have read the evidence, and find it

conflicting. We have at some length set out above the averments of the parties in their pleadings, and by reference thereto, without repeating, it is only necessary to say here that the testimony of respondent Gus Hensler substantially supports in detail the averments of his answer above outlined. That of appellants is largely in support of the allegations of their complaint as we have stated them. There does seem, however, to be a substantial departure in one part of their testimony from the statements of their complaint. They allege that they entered into an arrangement with respondent Gus Hensler to make him their agent to purchase said property, and that they reposed trust and confidence in him as such. But in their testimony they both say that Mr. Hensler told them when they first talked of the purchase that he was the agent for the owner of the property. The relation shown by the testimony is altogether different from that alleged in the complaint, and we think the two are inconsistent. To have been the agent of appellants to purchase as much of said property as he could for $600 was wholly incompatible with said respondent's being the agent of the owner, upon whom, as such, devolved the duty to sell as small a portion of the lots for $600 as he could. This testimony of each appellant showed that they were warned in the beginning that said respondent sustained such a fiduciary relation to the vendor as made it impossible for him to sustain a like relation to them in the premises. Such being their knowledge from the beginning, under the theory of their testimony we do not see how they may be said to have been justified in relying upon him with trust and confidence in their own behalf in a matter which would conflict with his known duties elsewhere. Under such circumstances, they knew he could not be true to both as an agent. This varia-

tion in the testimony from the theory and allegations of the complaint may have been a circumstance which led the trial court to the view that the preponderance of the evidence was with respondents. The trial court heard these parties testify, was impressed with the accuracy or want of accuracy of their statements from the personality of the witnesses as they appeared before him, and, in view of the testimony as it appears in the record, we do not think we should undertake to say that the preponderance of the evidence is clearly against the findings. Unless it so appears, this court has adopted the rule, even on trials *de novo,* that it will not disturb the findings. *Washington Dredging, etc., Co. v. Partridge,* 19 Wash. 62 (52 Pac. 523), and other cases there cited.

It is further urged that, even if it shall be found that the contract creating a fiduciary relation, and an implied trust, arising from breach of such contract, have not been established by the evidence, still the complaint is also based upon the further theory that a resulting trust has arisen, from the fact that the purchase money was paid by appellants, and title taken in the name of respondents. It is true, it appeared in evidence, and the court found, that the $600 paid by appellants became the purchase money for the whole of the lots; but it was further found that respondent Gus Hensler had completed negotiations for the purchase of the whole of the lots for $600 more than a month before negotiations began between him and appellants, and, further, that his negotiations with the latter began with a plain offer to sell them the south half of the lots, and ended with an agreement on their part to buy said south half for said sum of $600. The court also found that the advancement of the $600 was made by appellants on the promise of said Hensler that when he received

his deed for the lots he would convey to appellants the said south half. Under those findings, no resulting trust could arise in favor of appellants for the other half of the lots. They received just what they agreed to buy, and that for which they paid their money. Under such circumstances, it could not have been the intention of the parties that appellants were purchasing the north half of the lots, and a resulting trust cannot arise in opposition to the intention of the parties. 10 Am. & Eng. Enc. Law, p. 14. The following cases cited in support of the text are all in point: *White v. Carpenter,* 2 Paige, 217; *Steere v. Steere,* 5 Johns. Ch. 1 (9 Am. Dec. 256); *Elliott v. Armstrong,* 2 Blackf. 198; *Philips v. Crammond,* 2 Wash. C. C. 441 (Fed. Cas. No. 11,092). Under the theory of the complaint, respondent Gus Hensler was appellant's agent to buy the property; and yet it appeared in evidence that he was at considerable trouble and expense in making the purchase, including one trip to British Columbia, and other expense. It is not averred that any compensation was to be paid the alleged agent, or that the reasonable expenses were to be paid, and no offer to pay them is alleged. It nowhere appears that appellants paid or expected to pay the expenses and advancements made by said respondent. This is a circumstance that supports the court's findings, which establish such facts as preclude the theory that the intention of the parties was such as would create a resulting trust for the whole of the property. It is not reasonable that said respondent would donate his time and money without reimbursement.

It is assigned that error was committed in admitting in evidence certain letterpress copies of letters written by respondent Gus Hensler to the vendor of the property, and also of replies thereto. These letters concerned the nego-

tiations leading up to the purchase of the property, and were not material, except as they may have tended to sup-· port said respondent's testimony that he was negotiating for the purchase of the whole of the property from the beginning. That fact is, however, supported by other evidence. When a cause is triable *de novo* here, it will not be reversed for the improper admission of testimony when there is sufficient other competent testimony in the record to sustain the judgment. Under our views of the case, it is therefore unnecessary to discuss the admissibility of the alleged objectionable evidence.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, DUNBAR, and ANDERS, JJ., concur.